**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON**

**CIVIL ACTION NO. 09-33-JBC**

**DAVID RAY HAMMONS,**                                                         **PLAINTIFF,**

**V.**

**MICHAEL J. ASTRUE, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,**                              **DEFENDANT.**

**MEMORANDUM OPINION AND ORDER**

This matter is before the court upon cross-motions for summary judgment. R. 6, 9.  The court will grant the plaintiff's motion; deny the defendant's motion; and remand the case for further consideration in accordance with this opinion.

    **I.  Overview of the Process**

Judicial review of the decision of an Administrative Law Judge ("ALJ") to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).  The court does not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See id.*  Rather, the

ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

In determining disability, the ALJ conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); 20 C.F.R. § 404.1520.

**II. The ALJ's Determination**

At the time of the onset of his alleged disability, David Hammons was forty-eight years of age. AR 17. He applied for social security income ("SSI") and disability insurance benefits ("DIB") on July 12, 2006, alleging disability due to several impairments including cardiac, back, and mental health problems. AR 11. The claims were initially denied on November 29, 2006 (AR 53-56), and again upon reconsideration on August 7, 2007 (AR 59, 62). After a hearing on September 29,

2

2008, Administrative Law Judge ("ALJ") George L. Evans, III determined that Hammons did not suffer from a disability as defined by the Social Security Act.  AR 9-18.

At Step 1, the ALJ found that Hammons had not engaged in substantial gainful activity since the alleged onset date, June 29, 2006.  AR 11.  At Step 2, the ALJ found that Hammons suffered from the following combination of impairments considered "severe" under 20 CFR 404.1520(c) and 416.920(c): heart attacks in 1998 and 2005, coronary artery disease, hypertension, hyperlipidemia, angina, pedal edema, degenerative disc changes in the lower three lumber disc spaces, a right L3-L4 disc herniation, and complaints of "nerves" and depression.  AR 11-13.  The ALJ then determined at Step 3 that the plaintiff's impairments did not meet or equal a listing in the Listing of Impairments in 20 CRF § 404, Subpart P, Appendix 1.  AR 14.

At Step 4, the ALJ determined that Hammons was unable to perform any of his past relevant work as a driver for UPS.  AR 16.  Finally, the ALJ determined at Step 5 that, due to Hammons's age, education level, work experience, and residual functioning capacity ("RFC"), jobs exist in significant numbers in the national economy that he can perform.  AR 17.  Thus, the ALJ denied Hammons's claims for SSI and DIB on September 29, 2008.  AR 6.  Hammons appealed the decision, and his request for review was denied on December 4, 2008, because the ALJ

"fully considered and evaluated the evidence and reached the appropriate conclusion on the issues."  AR 1-4.

III.    **Legal Analysis**

Hammons challenges the ALJ's decision on two bases.  First, he argues that the RFC adopted by the ALJ was not supported by substantial evidence because the ALJ did not properly weigh the opinions of various medical sources.  Second, Hammons alleges that the ALJ should have obtained vocational expert testimony in determining that work exists in significant numbers in the national economy that he could perform.  Even though the court finds that the RFC is supported by substantial evidence, because the ALJ did not properly consider Hammons's nonexertional limitations at Step 5, it will remand the case for further consideration of whether work that Hammons could perform exists in significant numbers in the national economy.

A.    **The ALJ properly followed SSA procedures and his finding regarding Mr. Hammons's RFC is supported by sufficient evidence.**

The ALJ properly considered all medical opinions in the record and provided explanations for the weight he gave to each, in accordance with SSA regulations, so his RFC determination is supported by substantial evidence.  20 C.F.R. § 404.1527(d)(2) (requiring that good reasons be provided in a decision for the weight given to treating sources' opinions); *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) (holding that the ALJ must set forth a basis for rejecting the

4

opinions of a plaintiff's treating physicians).  Hammons contends that the ALJ's

finding that he had an RFC to perform light work with a few nonexertional

limitations goes against the opinions of his treating and examining physicians.  *See*

20 C.F.R. §§ 404.1527(d) (noting that generally the SSA gives more weight to

opinions from treating sources).  The ALJ explained, though, that Hammons's

treating physicians were not given much deference because their opinions were not

supported by objective medical evidence in the record.  *See Bogle v. Sullivan*, 998

F.2d 342, 347-48 (6th Cir. 1993) (stating that the Commissioner is not bound by

the treating physicians' opinions, which receive substantial weight only when they

are supported by clinical findings and consistent with the evidence).  The evidence

of each of Hammons's allegedly disabling conditions will be discussed in turn.

Hammons identified heart problems as his most disabling impairment at his

hearing on June 2, 2008.  AR 26.  He suffered heart attacks in 1998 and 2005,

after which he underwent stenting, and has been variously diagnosed with

hypertension, coronary artery disease, hyperlipidemia, and angina.  A diagnosis,

however, says nothing about the severity of a condition or the limitations such a

condition imposes.  *See Higgs v. Brown*, 880 F.2d 860, 863 (6th Cir. 1998).  None

of Hammons's treating physicians objectively assessed how his heart problems, or

other conditions, for that matter, affected his functional ability to work.

Conversely, non-examining physicians Dr. John Gedmark and Dr. Diosdado Irlandez

completed Physical Residual Functional Capacity Assessments on November 22,

2006, and August 6, 2007, respectively, which the ALJ considered in arriving at Hammons's RFC.

Hammons contends that the ALJ improperly rejected the opinion of cardiologist Dr. Ashwini Anand that Hammons was "under severe stress and is physically unable to work." AR 289. According to SSA regulations, the ALJ does not have to accept conclusory statements from a treating physician regarding a patient's disability. 20 C.F.R. §§ 404.1527(d)-(e) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Such conclusions are not medical opinions, "but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability." *Id.*

The ALJ noted that Hammons's complaints of increased chest pain, shortness of air, and exertional dyspnea in September 2007 coincided with his cessation of heart medications, not necessarily a worsening of his heart conditions. AR 15. In fact, the ALJ pointed out that Hammons had an "essentially benign cardiac work-up throughout 2006 and 2007;" that testing did not evidence stress-induced ischemia; and that Hammons's ejection fractions repeatedly exceeded fifty-five percent. AR 16. Moreover, Dr. Richard Park, Hammons's long-term family practitioner, did not even mention Hammons's heart problems in a medical statement dated July 12, 2007. The ALJ opined, and this court agrees, that "the

6

record is without any significant emergent treatment secondary to cardiac-related symptoms" which would corroborate Dr. Anand's work prohibition, so the ALJ's decision to give Dr. Anand's opinion negligible weight was justified.

Hammons's second complaint is of disabling back pain, and the ALJ acknowledged that Hammons's medical records "demonstrate the presence of an L3-L4 disc herniation and lumbar degenerative disease." AR 15. The ALJ pointed out, however, that in 2004, Dr. William Brooks, a neurosurgeon, recommended a schedule of physical therapy to treat Hammons's condition that he has not performed in the past four years;[1] instead, Hammons has relied solely on narcotic treatment of his pain. Moreover, the ALJ noted that there is no evidence Hammons has returned for neurosurgical treatment since his initial evaluation with Dr. Brooks in August 2004 and his follow-up in September 2004, where Hammons reported he was improving.

Dr. Park wrote on July 12, 2007, that "it would be quite difficult for [Hammons] to participate in any gainful employment" due to his back problems. AR 262. The ALJ noted that a month before Dr. Park made that conclusion, Hammons reported to consultative examiner Dr. Richard Lewis that narcotic medication helped immensely with his pain control and he was able to get around fairly well until he had to stop taking it due to financial constraints. AR 237. The

---

[1]There is no evidence in the administrative record that Hammons underwent physical therapy, but Hammons reported to state examining physician Dr. Robert Lewis that he attended physical therapy, without any long-term results. AR 237.

ALJ believed "[s]uch a statement clearly contradicts the debilitating level of pain alleged by [Hammons]," (AR. 15) especially combined with Dr. Lewis's observations that Hammons "ambulated without need of an assistive device," could "stoop and reach without difficulty" and "squat and bend over normally," and his muscle strength was "5/5 in both upper and lower extremities" (AR 238). Because Dr. Park's opinion that Hammons's back problems would make it difficult for him to participate in any gainful employment appears contradictory to Dr. Lewis's examination and Hammons's treatment record, and because it "[f]ails to address specific work-related limits on [Hammons's] function," the ALJ was justified in giving it negligible weight. 20 C.F.R. § 404.1527(d)(4) (stating that the ALJ is to give more weight to opinions that are more consistent with the record).

Hammons also argues that his RFC is not supported by substantial evidence because the ALJ rejected the specific restrictions assessed by Dr. Lewis. Although he does not specify which restrictions were rejected, presumably Hammons is referring to Dr. Lewis's "Overall Impression" that Hammons "can sit for 30 minutes, stand for 30 minutes, and walk for 100 to 200 feet before he gets shortness of air and chest pain." AR 241. SSA regulations mandate that an ALJ consider the supportability of any physicians' findings, whether consulting or treating. 20 C.F.R. § 404.1527(d)(3), (f)(2)(ii). Dr. Lewis's assessments of Hammons's health during his examination, mentioned above, and his "Overall Impression" do not correlate. Notes in the early pages of Dr. Lewis's report make

8

clear that those restrictions were merely a transcription of Hammons's self-reporting.  AR 236-37 (using phrases "per patient" and "according to the patient" and listing the exact restrictions later suggested).  The ALJ concluded that Dr. Lewis's restrictions were "not supported by longitudinal medial evidence of record;" his assessment of Hammons's "ability to sit, stand and walk appears premised entirely on [Hammons's] subjective reports."  AR 16.  Thus, the ALJ was justified in giving Dr. Lewis's restrictions negligible weight in the RFC calculus.

The third ailment of which Hammons complained was mental health issues, which, as the ALJ determined, is unsupported in his medical records.  The SSA engaged two doctors to complete Psychiatric Review Techniques (PRT).  On November 16, 2006, Dr. Dan Vandivier found no evidence of a medically determinable mental impairment.  AR 213.  On June 18, 2007, Dr. Mary K. Thompson diagnosed Hammons with depressive disorder with mild limitations in activities of daily living, social functioning, and maintaining concentration persistence or pace.  AR 247-259.  The ALJ properly determined Hammons's RFC in light of the fact that "the record is completely bereft of any mental health treatment and is silent with regard to any regular or ongoing complaints of psychological symptoms."  AR 16.

Hammons additionally, but unpersuasively, challenges the ALJ's reliance upon the consulting opinions of Drs. Gedmark and Irlandez because he claims they did not have all pertinent treatment records when they completed their

9

assessments.  Specifically, Hammons alleges that Dr. Anand's records from April
10, 2006, to September 26, 2007, were not available for either doctor to review.
It is Hammons's responsibility to provide a complete record enabling the Secretary
to make a disability determination.  20 C.F.R. § 416.912(a) ("In general you have
to prove to us that you are blind or disabled.  This means that you must furnish
medical and other evidence that we can use to reach conclusions about your
medical impairments."); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d
211, 214 (6th Cir. 1986).  Hammons does not claim, nor does it appear, that the
SSA wrongfully withheld Dr. Anand's treatment records; it is not clear that
Hammons had even provided the SSA with those documents at that time.  Dr.
Gedmark completed his November 22, 2006, report based on the information made
available to him, and it provides a snapshot of Hammons's health at that time,
which aided the ALJ's RFC decision-making.

Hammons further complains that the consulting physicians, Drs. Irlandez and
Gedmark, did not consider Dr. Park's "later treatment records," and that Dr.
Gedmark did not have the opportunity to review Dr. Lewis's examination notes or
Dr. Park's "medical statement."  Admittedly, neither doctor could have considered
documentation of medical visits after their assessments.  But the later treatment
records of Dr. Park do not support Hammons's disability claim; address new,
worse, or different health issues; or provide objective evidence of Hammons's
physical limitations.  Drs. Anand and Park's conclusory work restrictions would not

10

have enhanced the consulting physicians' understanding of Hammons's condition or increased the accuracy of their assessments.  Moreover, the ALJ himself addressed these later records.  He mentioned that Dr. Park's later treatment notes "document ongoing complaints of low back pain," but pointed out that Dr. Park also mentioned Hammons had not had any cardiac or pulmonary problems at all.  Because the "state agency opinions . . . appear overall consistent with, and supported by, the entirety of the record," the ALJ properly gave appropriate weight to them.  AR 16.

For the reasons outlined above, the ALJ's RFC determination was based on substantial evidence.

**B.   There is not substantial evidence to support the ALJ's finding that significant numbers of light work jobs exist in the national economy that Hammons could perform.**

The ALJ's determination that significant numbers of jobs existed in the light work category that Hammons could perform is not based on substantial evidence because it was bereft of "reliable evidence of some kind that [Hammons's] nonexertional limitations do not significantly limit the range of work permitted by his exertional limitations." *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The ALJ found that Hammons had the RFC to perform light work if he avoided concentrated exposure to temperature extremes and workplace hazards, and only occasionally crouched, crawled, or climbed ladders, ropes, and scaffolds.  AR 14.  Given those exertional and nonexertional limitations, Hammons could not perform his former job as a UPS driver.  Accordingly, the ALJ should have used the

11

grids as a framework and explained the other evidence he relied on in coming to his decision that Hammons's nonexertional limitations were insignificant in the other work calculus.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 2 § 200.00(e)(2); SSR 83-14 (noting the rules "provide a framework for consideration of how much an individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations"); *Abbott v. Sullivan*, 905 F.2d 918, 926-27 (6th Cir. 1990).

Instead, the ALJ simply stated that Hammons's "additional limitations have little or no effect on the occupation base of unskilled light work."  AR 17.  The ALJ did not provide any evidence of reference to the rules and guidelines in 20 C.F.R. Part 404, Subpart P, Appendix 2 to "determine how the totality of limitations or restrictions reduces the occupational base of administratively noticed unskilled sedentary, light, or medium jobs."  Nor did he seek assistance of a vocational expert in arriving at his conclusion that they did not.  SSR 83-14; *see Burton v. Sec'y of Health and Human Servs.,* 893 F.2d 821, 822-23 (6th Cir 1990) (relying on other evidence, mainly a vocational expert's testimony, to carry the Secretary's burden of showing that there was substantial work in the national economy that the claimant could perform).

The Commissioner contends that Hammons's environmental restrictions are "encompassed" in SSR 83-14 and alleges that ruling is the "other evidence" the ALJ considered in determining Hammons's restrictions were insignificant.  R. 9, at

12

11-12.  It is problematic, though, that the ALJ never explicitly referred to SSR 83-14 or explained why Hammons's nonexertional limitations have little or no effect on the occupational base, so the claim must be remanded for him to do so.  Social Security Ruling (SSR) 83-14 provides an example of an evaluation of the ability to perform other work of a claimant like Hammons, who is limited to "[l]ight exertion combined with a nonexertional impairment."  It suggests that Hammons's postural limitations related to crouching, crawling, and climbing are some of the "nonexertional limitations or restrictions which have very little or no effect on the unskilled light occupational base."  But SSR 83-14 is silent as to how to treat Hammons's need to avoid concentrated exposure to temperature extremes and workplace hazards.  In such situations, "[w]here nonexertional limitations or restrictions within the light work category are between the examples above, a decisionmaker will often require assistance of a [vocational specialist]."  SSR 83-14.

The ALJ did not engage the assistance of a vocational specialist.  Nor did he cite any other evidence in finding that a significant number of jobs would not be ruled out by Hammons's nonexertional limitations.  *See Shelman*, 821 F.2d at 322.  Thus, his decision that significant numbers of jobs exist that Hammons can perform and corresponding finding of "not disabled" is not supported by substantial evidence and the Commissioner did not meet his burden at Step 5.

13

Accordingly, **IT IS ORDERED** that Hammons's motion for summary judgment (R. 6) is **GRANTED** and the Commissioner's motion for summary judgment (R. 9) is **DENIED.  IT IS FURTHER ORDERED** that the case is **REMANDED** to the ALJ for further findings in accordance with this decision.

**Signed on  January 5, 2010**

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY